**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HOLLY B.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.    24-cv-4040** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    **May 28, 2025**

      Holly B. ("Plaintiff") brought this action seeking review of the Commissioner of Social

Security Administration's ("SSA") decision denying her claim for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f (the

"Act"). This matter is before me for disposition upon consent of the parties. For the reasons set

forth below, Plaintiff's Request for Review (ECF No. 8) is **DENIED**.

I.      **PROCEDURAL HISTORY**

      Plaintiff protectively filed the instant application for disability benefits on October 31,

2022, alleging disability beginning January 2, 2014, due to human immunodeficiency virus

("HIV"), chronic obstructive pulmonary disease ("COPD"), emphysema, asthma, insomnia, and

depression. (R. 64, 195-203, 219). Plaintiff's application was denied at the initial level on

March 8, 2023, (R. 55-64), and upon reconsideration on May 26, 2023. (R. 65-75). Plaintiff

requested a hearing before an Administrative Law Judge ("ALJ"). (R. 134-66). Plaintiff,

represented by counsel, as well as a vocational expert testified at the September 20, 2023,

administrative hearing. (R. 34-54). On October 16, 2023, the ALJ issued a decision unfavorable

to Plaintiff. (R. 14-33). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on June 18, 2024, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On August 8, 2024, Plaintiff filed a complaint in this Court. (Compl., ECF No. 1). On August 23, 2024, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). (Consent, ECF No. 4). On December 5, 2024, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 8). The Commissioner filed a Response on February 5, 2025. (Resp., ECF No. 12). Plaintiff filed a Reply on February 18, 2025. (Reply, ECF No. 13).

## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on December 24, 1974, and was 39 years old on the alleged disability onset date. (R. 64). Plaintiff obtained her GED in lieu of graduating high school. (R. 42). Plaintiff hos no past relevant work.

### A.    Medical Evidence

On June 24, 2010, Plaintiff presented to Anne Norris, M.D. with Penn Presbyterian Medical Center complaining of difficulty sleeping, speech issues, and anxiety. (R. 422). On July 23, 2010, Dr. Norris, diagnosed Plaintiff with depression. (R. 420-21). She also noted that Plaintiff could not work because she could not talk. (R. 418). Plaintiff has continuously treated

---

[1]  Because Plaintiff's request for review implicates only her mental impairments, the Court summarizes the evidence relating to any physical impairments only as necessary to adequately address the issues presented in this appeal.

with Dr. Norris and other providers for her mental health conditions ever since.  (R. 485-641 (treating notes from December 2010 through April 2020)).

On September 20, 2017, licensed psychologist Avi Nires conducted a consultative examination of Plaintiff.  (R. 628-35).  Plaintiff denied ever having been hospitalized for a psychiatric condition or having received outpatient treatment for mental health issues.  (R. 628).  Plaintiff also denied any drug or alcohol use at that time but acknowledged a history of substance abuse.  (R. 629).  Nires noted, however, that certain medical records indicated the use of cocaine in June 2017.  (R. 634).

Nires observed that Plaintiff's depressive symptomatology included: dysphoric moods, hopelessness, loss of usual interest, irritability, worthlessness, diminished self-esteem, concentration difficulties, diminished sense of pleasure, and social withdrawal.  (*Id.*).  However, Plaintiff denied any suicidal or homicidal ideation.  (*Id.*).  Nires found that Plaintiff's anxiety-related symptomatology included: excessive apprehension and worry, irritability, restlessness, and difficulty concentrating.  (*Id.*).  He observed that Plaintiff's cognitive symptomatology and deficits included: short-term and long-term memory deficits, concentration difficulties, and word-finding deficits.  (*Id.*).  Plaintiff also reported experiencing panic attack symptoms, including palpitations, sweating, trembling, and breathing difficulties.  (*Id.*).  She denied a history of trauma or experiencing any manic symptomatology but related that she often hears music playing and that this occurred after she was assaulted in 2009.  (*Id.*).  She also indicated that at times she feels like things are crawling all over her.  (*Id.*).  As for her activities of daily living, Plaintiff reported that she was able to dress, bathe, and groom herself, but that she could not prepare food for herself, clean, do laundry, shop, manage her money, or drive.  (R. 631).

Nires noted that upon examination, Plaintiff's demeanor and responsiveness to questions was cooperative; her manner of relating, social skills, and overall presentation was adequate; her

3

thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia; her sensorium appeared clear; she was fairly groomed; her posture, eye contact, and expressive and receptive language skills were normal; her cognitive functioning was estimated to be in the average range; her general fund of information was appropriate; and her insight and judgment were fair. (R. 630-31). However, Nires also noted that her speech was at times unintelligible and she was unable to verbalize appropriately, her affect was depressed and anxious, and her attention, concentration, and memory skills were mildly impaired. (*Id.*).

Ultimately, Nires opined that Plaintiff had mild limitations in her ability to: understand, remember, and carry out instructions and make judgments on simple and complex work-related decisions. (R. 633). Nires further opined that Plaintiff had moderate limitations in her ability to: interact with others and respond appropriately to usual work situations and changes in a routine work setting. (*Id.*).

Plaintiff has experienced various ailments affecting her skin during the alleged disability period. On August 10, 2021, Dr. Norris opined that Plaintiff was exhibiting signs of delusional parasitosis as she insisted her skin problems were caused by insects biting her and crawling beneath her skin. (R. 727). Plaintiff began seeing Bryce Carter, a licensed psychologist, in August 2021 due to these delusions. (R. 721). Carter frequently noted her ongoing delusions regarding insects in her skin as well as the belief that the Covid-19 vaccine contained GPS-tracking software. (R. 721). On September 23, 2024, Carter observed that Plaintiff had a depressed mood, low motivation, fatigue, psychomotor retardation, flat affect, and poverty of speech. (R. 1011). Carter opined that Plaintiff had moderate limitations in her ability to: respond appropriately to supervision, criticism, and redirection; concentrate, persist, and complete tasks; adapt or manage herself; and understand, remember, or apply information. (R. 1011-12). Carter also opined that Plaintiff's mental disorder was serious, persistent, and would

4

result in her experiencing four-plus "bad days" per month where she would not be able to work due to an increase in symptoms. (R. 1012-13). Moreover, he assessed that her level of functioning would remain the same even without the presence of substance use. (R. 1013).

On December 15, 2021, licensed psychologist Christopher Patrone performed a consultative examination of Plaintiff. (R. 779-92). Patrone observed that while she was cooperative, her manner of relating, social skills, and overall presentation were poor; she was disheveled with poor personal hygiene and grooming; and it was hard to understand what she was saying at times due to stammering, mispronunciation, and the damage resulting from her prior assault. (R. 783). He found that even though she appeared alert and oriented, her attention, memory, and cognitive function were impaired. (R. 784). He assessed poor insight, judgment, and thought processes based on her delusions, and he diagnosed Plaintiff with major depressive disorder with psychotic features, delusional disorder, unspecified anxiety disorder with panic attack specifier, and substance abuse disorder. (R. 784-85). He also noted that she could not manage her own money because of mental health issues. (*Id.*). Finally, Patrone opined that Plaintiff had mild limitations in her ability to carry out simple instructions and make judgments on simple, work-related decisions; moderate limitations in her ability to understand and remember complex instructions and interact appropriately with the public; and marked limitations in her ability to carry out complex instructions, make judgments on complex, work-related decisions, respond appropriately to usual work situations and to changes in a routine work setting, and interact appropriately with supervisors and coworkers. (R. 786-87).

Also on December 15, 2021, licensed nurse practitioner Dana Ridley examined Plaintiff. (R. 793-816). At that examination, Plaintiff reported suffering from: an unspecified "hearing issue"; trouble communicating; memory loss; shortness of breath; HIV; COPD; ADHD; depression; other unspecified mental health issues; and poor vision. (R. 795-97). Plaintiff stated

that she felt like her hearing issue was related to her trouble communicating, and that they both likely stemmed from an assault she suffered while she was homeless. (R. 796). According to her, she was hit in the back of her right ear and on top of her head, and she still feels those injuries to this day. (*Id.*). Ridley observed that while Plaintiff slurred some of her words and stuttered at times, she was nevertheless "understandable," and she did not have a problem communicating. (*Id.*).

On February 14, 2023, State agency psychological consultant Arlene I. Rattan determined that Plaintiff's severe medical impairments[2] resulted in a mild limitation in Plaintiff's ability to understand, remember, or apply information and moderate limitations in her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (R. 57). She also determined that Plaintiff could: understand, retain, and follow simple instructions; perform simple, routine, repetitive tasks in a stable environment; make simple decisions; carry out very short and simple instructions; maintain socially appropriate behavior; ask simple questions and accept instruction; sustain an ordinary routine without special supervision; and exercise appropriate judgment. (R. 62). Rattan determined that Plaintiff would not require special supervision in order to sustain a routine. (*Id.*).

On reconsideration on May 26, 2023, State agency psychological consultant Valorie Lynn Rings agreed in large part with Rattan's assessment and determined that Plaintiff was moderately limited in her ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from

---

[2] Rattan found that Plaintiff had the following severe medical impairments: HIV; substance addiction disorders for both drugs and alcohol; asthma; depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders. (R. 57).

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (R. 71-72). Rings determined that Plaintiff was not significantly limited in her ability to: carry out short, simple, or detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (*Id.*).

### B.    Nonmedical Evidence

The record also contains nonmedical evidence. Plaintiff testified at the September 20, 2023, administrative hearing as to her work history, the severity of her medical issues, and how those medical issues affected her functional capacity. (R. 34-54). She testified that she lived with her mother and that she mostly kept to her room. (R. 41-42). Though she was listed as a caretaker for her mother, Plaintiff stated that her sister functioned as her mother's home health aide. (R. 45). She also noted that she struggled with concentration, had never had a driver's license, her highest level of education completed was fifth grade, and she had never had any vocational training or licensure. (R. 42).

Plaintiff stated that she had not worked for over 20 years because she could not stand for long periods, was prone to falling, could not hear in her right ear, had poor equilibrium, often lost her concentration, and could not speak or communicate at times due to pain in her chest and

throat. (R. 42-43). She testified that she was homeless for 11 years, and that during that time she was attacked by someone who hit her in the head with a gun and stomped her head to the ground, damaging her throat. (R. 44). She could not talk for an entire year after this incident and she "lost [her] whole vocal cord." (*Id.*). She also testified to having memory issues. (*Id.*).

Plaintiff acknowledged having a history of substance abuse but stated that she was "clean" at the time of the hearing. (R. 46). At that time, she had been sober for almost two months, and also had a period of sobriety for eight months during 2022. (R. 46-47). She noted that the symptoms she described above were "the same" regardless of whether she was using drugs or not. (R. 47).

Plaintiff also testified to treating with several psychologists, though she admitted that she occasionally forgot to attend her appointments. (R. 49). She believed that she had dust mites under the skin on her face, and that they "bit[]" her and "g[o]t deeper [into her] skin." (R. 47-48).

Plaintiff completed adult function reports on February 10, May 23, and June 13, 2023. (R. 232-44, 253-60, 272-83). On February 10, Plaintiff stated that she: typically watched television all day; did not take care of any people or pets; relied on her sister to care for her; did not sleep well due to her mental conditions, know how to drive, manage her finances, cook, or perform any other house or yard work; needed constant reminders to take her medication; stays in her room due to her depression; and cannot pay attention to or remember anything. (R. 233-36). However, she acknowledged that her mental conditions did not affect her ability to understand, follow instructions, or get along with others. (R. 236). On May 23, along with similar remarks to her February 10 adult function report, Plaintiff added that her equilibrium was off, she could not hear anything in her right ear, and she could not handle stress. (R. 253-56). She also noted at that time that her mental conditions affected her ability to understand, follow

instructions, and get along with others.  (R. 259).  On June 10, Plaintiff reported that she

sometimes prepared her own meals and that she goes outside every day.  (R. 274-75).  She

further indicated that her mental conditions did not negatively affect her ability to talk, complete

tasks, understand, or get along with others, and that she followed spoken instructions "well."  (R.

276).

Donna B.—Plaintiff's mother—and Shamire Pritchard—Plaintiff's sister and caregiver—

each completed third party function reports on February 10 and June 13, 2023, respectively.  (R.

224-31, 261-71).  Donna B. noted that Plaintiff: does not care for other people or animals; had no

trouble with personal care; went outside twice a week; could not drive, manage her own money,

or prepare meals for herself; could pay attention for only a short period of time; and rarely

engaged in social activities.  (R. 225-29).  Donna B. continued that Plaintiff's mental conditions

negatively affected her ability to talk, hear, remember, complete tasks, concentrate, and follow

instructions.  (R. 229).  Pritchard added that Plaintiff's mental conditions prevented her from

completing simple tasks such as "self-care"; Plaintiff was "very forgetful, unstable, and

confused"; she was unable to "process assigned task[s]"; she sleeps excessively; and she

"wanders off and gets lost."  (R. 261-62).  Pritchard stated that she functions as a caregiver for

both Plaintiff and their mother, performing daily tasks such as cooking and cleaning, as well as

administering medication for Plaintiff.  (R. 262).  She also must remind Plaintiff to put on

clothes before leaving the house.  (R. 263).  Shamire stated that Plaintiff's mental conditions

negatively affected her ability to talk, remember, complete tasks, concentrate, understand, follow

instructions, and get along with others.  (R. 266).


## III.    ALJ DECISION

Following the administrative hearing, the ALJ issued a decision in which she made the

following findings:

1.    The claimant has not engaged in substantial gainful activity since October 31,
2022, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: major depressive disorder,
delusional disorder, anxiety disorder, substance use disorder, attention deficit
hyperactivity disorder, human immunodeficiency virus (HIV), asthma, chronic
obstructive pulmonary disease, emphysema, and dysphonia (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that
meets or medically equals the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the
claimant has the residual functional capacity to perform light work as defined in
20 CFR 416.967(b), except for the following: can occasionally climb and crawl;
can frequently balance, stoop, kneel, and crouch as defined in the Selected
Characteristics of Occupations (SCO); can tolerate occasional concentrated
exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts,
gases, poor ventilation, unprotected heights, and moving mechanical parts; can
understand, remember and carry out simple instructions; can use judgement to
make simple work-related decisions; can communicate simple messages and ask
simple questions; can occasionally interact with the public, coworkers, and
supervisors; cannot perform tandem tasks requiring cooperation with others to
complete tasks; and can deal with occasional changes in a routine work setting.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on December 24, 1974 and was 47 years old, which is

defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). (R. 16-23).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since October 31, 2022, the date the application was filed (20 CFR 416.920(g)).

(R. 19-28).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 28).


## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the

11

> impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.   DISCUSSION

### A.   The Parties' Arguments

Plaintiff argues the ALJ erred in determining her RFC because she improperly rejected

Patrone's and Carter's opinions and Plaintiff's testimony and credited Nires's opinion.[3]  (*Id.* at

13-21).  First, Plaintiff argues that the ALJ's analysis of the opinions of both Patrone and Carter

was entirely "conclusory."  (*Id.* at 16 (quoting *Palmer v. Comm'r of Soc. Sec.*, No. 16-cv-11134,

2017 WL 1632990, at *8 (E.D. Mich. May 2, 2017))).  Noting that each conducted only a "one-

time" examination of Plaintiff, the ALJ rejected their conclusions regarding Plaintiff's mental

functional capacity as not consistent with the record, which illustrated "abnormal mood and

affect[,] but usually normal speech and appearance, alertness, and oriented and normal thought

process," thereafter citing to three exhibits in the record.  (R. 26, 27 (citing exhibits 15F, 704-78,

18F, 817-924, 20F, 942-83)).  Highlighting this language,  Plaintiff argues that: 1) the ALJ's

"global reference" to three large exhibits generally prevents meaningful judicial review; 2) the

ALJ engaged in improper medical analysis by relying on the exhibits she cited; 3) the exhibits

cited do not actually support the RFC determination; 4) the ALJ gave improper weight to the fact

that Patrone's and Carter's opinions were based on "one-time" examinations of Plaintiff; 5) the

ALJ did not consider Patrone's specialty, Carter's "treating relationship" with Plaintiff, or the

fact that both actually examined her; and 6) the ALJ's brief statement illustrates that the ALJ did

not consider the "hallmark feature" of mental impairments like Plaintiff's—that they tend to

present in a variable pattern, and that the individual will typically experience "good days" and

"bad days."  (Pl.'s Br., ECF No. 8, at 17-20).

Second, Plaintiff argues that in crediting the opinion of Nires, the ALJ: 1) did not

consider the fact that the opinion was rendered in 2017, "far outside the period of adjudication";

---

[3]  The ALJ found Patrone's opinion partially persuasive, Carter's opinion not persuasive, and Nires's opinion "persuasive" and "consistent with the other evidence of record."  (R. 26-27). She found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the record.  (R. 22).

and 2) the ALJ failed to weigh Nires's opinion against those of Patrone and Carter, thereby abdicating her duty to explain her decision. (*Id.* at 16).

After setting forth the background law regarding the ALJ's duty to weigh the evidence, The Commissioner argues that the ALJ was entitled to weigh the medical evidence in her discretion, accept certain portions of the evidence, and reject other portions. (Resp., ECF No. 12, at 6).

Regarding Patrone's opinion, the Commissioner argues that substantial evidence supported the ALJ's determination that Patrone's conclusion that Plaintiff had certain marked limitations[4] was not persuasive. (*Id.* at 14-15). The Commissioner highlights that although the record evidence illustrated Plaintiff had a depressed mood and anxious affect at times, the ALJ ultimately found that the evidence consistently showed Plaintiff was alert and oriented with normal thought processes, was cooperative, displayed normal speech, and could carry out simple tasks. (*Id.* at 14-19). For similar reasons, he further maintains that substantial evidence supported the ALJ's determination that Carter's opinion was not persuasive. (*Id.* at 16). He emphasizes that the ALJ noted Carter's opinion was not well-supported by his own findings or consistent with the rest of the record. (*Id.* (citing R. 26)).

The Commissioner insists that under the current regulations the ALJ did not err by failing to accord any weight to the fact that Patrone and Carter were both treating providers. (*Id.* at 12, 14-19 (citing 20 C.F.R. § 416.920c(a) (effective for claims filed after March 27, 2017))). As for

---

[4] Patrone opined that Plaintiff had marked limitations interacting with supervisors and coworkers and responding appropriately to usual work situations and to changes in a routine work setting. (R. 26 (citing 779-92)). He further determined that Plaintiff had moderate limitations in her ability to understand and remember complex instructions and interact with the public, and mild limitations in her ability to carry out simple instructions and make judgments on simple, work-related decisions. (R. 786-87). The ALJ found the latter portion of Patrone's opinion persuasive. (R. 26).

Patrone's and Carter's relationship with Plaintiff or their respective specialties, the Commissioner notes the ALJ need only discuss those factors if the ALJ finds that two medical opinions about the same issue are both equally well-supported and consistent with the other record evidence. (*Id.* at 18-19 (citing 20 C.F.R. § 416.920c(b)(3))). Because the ALJ, in her discretion, did not find either Patrone's or Carter's opinion equally persuasive and consistent with the rest of the record evidence (including Nires's opinion), the ALJ was not required to discuss the significance of either's specialization or relationship with Plaintiff. (*Id.* at 19 (citing 82 FR 5844-01, 2017 WL 168819, at *5859 (Jan. 18, 2017) ("Because the content of evidence, including medical opinions and prior administrative medical findings, varies with each unique claim, it would not be appropriate to set out a detailed rule for when [an 'equally persuasive'] situation may occur. We expect that each adjudicator will use his or her discretion to determine when this situation occurs."))).

Regarding the ALJ's treatment of Nires's opinion, the Commissioner contends that the ALJ did in fact note that the opinion was from 2017, yet still came to the conclusion that the opinion was consistent with the other record evidence. (*Id.* at 13-14.) Furthermore, the ALJ did not rely solely on the opinion of Nires in coming to her conclusion. (*Id.* at 13-14.)

Regarding the ALJ's duty to explain her determination, the Commissioner highlights that an ALJ is not required to use any specific language form, but only to sufficiently develop the record and explain her findings to permit meaningful review. (*Id.* at 6-7 (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004))). Here, the Commissioner argues that the ALJ sufficiently explained her rationale when she noted that although the evidence illustrated that Plaintiff had disturbance of mood and affect and supported a finding of mental impairment with certain accompanying limitations, the totality of the evidence "still allow[ed] for the performance of simple routine work." (*Id.* at 7-8 (quoting R. 24)). In coming to this conclusion, the ALJ

15

relied upon: 1) the treatment notes of Dr. Norris, which indicated that Plaintiff was alert and fully oriented with good eye contact, good phonation, and normal memory and affect; 2) the treatment notes of Carter, which indicated that although Plaintiff had difficulty expressing herself and a painful affect and appeared tearful and overwhelmed at times, she otherwise had normal mood and affect and was alert and oriented, with normal thought processes; 3) the treatment notes from Patrone, who noted that although Plaintiff had difficulty speaking due to a vocal cord injury, her receptive language skills were intact and her thought process appeared coherent and goal-directed; 4) Plaintiff's statements that she was, in fact, acting as the caretaker for her mother, and that she was also still using marijuana in November 2021; and 5) her admission that she sometimes missed her medical appointments. (*Id.* at 8-11 (citing R. 24-25)). According to the Commissioner, this was sufficient explanation.

Plaintiff replies that the arguments set out by the Commissioner were not actually articulated by the ALJ in her opinion, and that they amount to improper post hoc rationalizations. (Reply, ECF No. 13, at 1-3).[5]

## B.    Analysis

The ALJ is responsible for fashioning a claimant's RFC, including her mental RFC. A claimant's RFC is what she can still do despite her established impairments. 20 C.F.R. § 416.945(a)(1). In making an RFC determination, the ALJ must consider all evidence before her. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999). That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. *See Fargnoli v.*

---

[5]  Plaintiff does not specify which of the Commissioner's arguments are post hoc rationalizations, but instead alludes to his "arguments" generally. (Reply, ECF No. 13, at 2). For the reasons laid out below this argument fails, as the ALJ did in fact articulate the specific rationales in her opinion.

*Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); 20 C.F.R. § 416.945(a).  An ALJ must consider the medical opinions together with the rest of the relevant evidence, and explain the weight given to those opinions in her decision.  *Chandler*, 667 F.3d at 362.  While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."  *Id.* at 361.  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."  *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981)).  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.  *See, e.g.*, *Byrd v. Comm'r of Soc. Sec.*, No. 23-4957, 2024 WL 4631645, at *9 (E.D. Pa. Oct. 30, 2024); *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

The social security regulations "require, an ALJ to offer 'a narrative discussion describing how the evidence supports'" the limitations imposed.  *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (citing SSR 96-8P, at *7).  An "ALJ 'may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'"  *Mason*, 994 F.2d at 1067 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)); *see also Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 65 (3d Cir.1986).

When evaluating medical evidence, the most important factors are supportability and consistency, and the ALJ must explain how he or she considered these factors for a medical source's medical opinions or prior administrative medical findings in the determination or decision.  20 C.F.R. § 416.920c(a)-(c).  The remaining factors include the medical source's

relationship with the claimant, the medical source's specialization, and other factors that tend to support or contradict the medical opinion. *Id.* at § 416.920c(c). An ALJ, in her discretion, need only reference these other factors if she finds that two medical opinions about the same issue are equally persuasive, well-supported, and consistent with the record evidence. *Id.* at § 416.920c(b)(3).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 119). The ALJ must provide "not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which [she] rejects and [her] reason(s) for discounting such evidence."). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.*

Based on the above principles, the ALJ did not err in her evaluation of the medical evidence. She surveyed the relevant medical opinions (including those of Patrone, Carter, and Nires), and ultimately determined that although the record evidence illustrated disturbance of mood and affect and the existence of certain mental impairments and limitations, the totality of the evidence still supported the conclusion that Plaintiff could perform simple routine work. (R. 24). In coming to this conclusion, the ALJ noted the following: 1) throughout the course of her treatment, Plaintiff consistently appeared normal and alert; was oriented to person, place, and time; had good eye contact, phonation, and speech; and presented with normal memory and affect; 2) she admitted to daily marijuana use at an August 26, 2021, exam with Carter; 3) she

admitted to daily use of crack at a March 22, 2023, office exam with Dr. Norris; 4) Plaintiff

stated that although her sister was designated as their mother's caretaker, in actuality the

majority of the work fell to Plaintiff; 5) at the December 15, 2021, examination, Patrone himself

noted that Plaintiff was cooperative, her receptive language skills were intact, and her thought

process appeared coherent and goal-directed; and 6) Plaintiff did not show up to a March 30,

2023, medical appointment with Carter, having decided to go shopping with her mother instead.

(R. 24-25 (citing 712, 714, 721, 724, 783, 832, 838-43, 847-48, 934-35, 952-57)).  The above

record evidence supports the ALJ's RFC determination.  *See* 20 C.F.R. § 416.930 (the claimant

must follow prescribed treatment if the treatment is expected to restore the claimant's ability to

work); *see also Burnett*, 220 F.3d at 118 (substantial evidence is "more than a mere scintilla" and

"such relevant evidence as a reasonable mind might accept as adequate"); *Simmonds*, 807 F.2d at

58 (even if the record could support a contrary conclusion, the decision of the ALJ will not be

overruled as long as there is substantial evidence to support it); *Velazquez v. Berryhill*, No. 18-

cv-1385, 2019 WL 1915627, at *13 (D. Conn. Apr. 30, 2019) (finding no error in the ALJ's

consideration of the claimant's role as a caretaker for her disabled son, particularly where it was

just one factor considered in the credibility analysis) (citing *Davis v. Comm'r of Soc. Sec.*, No.

16-cv-1074, 2017 WL 7049560, at *8 (N.D.N.Y. Nov. 20, 2017)).

The ALJ also noted that Rattan and Rings both opined that Plaintiff had mild limitations

in understanding, remembering or applying information and moderate limitations interacting

with others, adapting or managing herself, and concentrating, persisting or maintaining pace.  (R.

25 (citing 55-63, 65-74)).  Moreover, they opined that Plaintiff could understand, retain and

follow simple instructions; perform simple, routine repetitive tasks in a stable environment;

make simple decisions; and carry out very short and simple instructions.  (*Id.*).  The ALJ found

both of these opinions persuasive and consistent with the record evidence.  (*Id.*; *see also* SSR 96-

6p, 1996 WL 374180, at * (July 2, 1996) ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . [20 C.F.R. § 416.927(f)] require[s ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s)."); *Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration" by the ALJ)).  This evidence constitutes substantial evidence supporting the ALJ's RFC determination.  *See Burnett*, 220 F.3d at 118; *see also Simmonds*, 807 F.2d at 58.  Therefore, Plaintiff's contention that the record—including exhibits 15F, 18F, 19F, 20F—did not support the ALJ's RFC determination fails.  And to the extent that Plaintiff argues the ALJ engaged in improper medical analysis, the Commissioner is correct that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.  20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184; *Chandler*, 667 F.3d at 361.  Plaintiff does not point to anything in the ALJ's decision that amounts to the improper interpretation of raw medical data.[6]

    In rejecting Patrone's December 15, 2021, opinion that Plaintiff had marked limitations in carrying out complex instruction, making judgments on complex work-related decisions, interacting with supervisors and coworkers, and responding appropriately to usual work situations and to changes in a routine work setting, the ALJ noted that although these findings

---

[6] Plaintiff argues that the ALJ's acknowledgement that the record showed certain abnormal findings that were also reflected in Patrone's and Carter's opinions "necessarily" demonstrated that she engaged in "drawing lay medical conclusions" because she credited those portions of Patrone's and Carter's opinions but ultimately did not find the rest of their opinions persuasive.  (Pl.'s Br., ECF No. 8, at 18).  In effect, Plaintiff argues that ALJs are not permitted to parse medical opinions and accept certain portions of those opinions while rejecting other parts of the opinions, as this would amount to improper lay medical analysis.  This contention flies in the face of established law and precedent.  *See Byrd*, No. 23-4957, 2024 WL 4631645, at *9; *Durden*, 191 F. Supp. 3d at 455.

might have been supported by Patrone's examination on that day, the record evidence over the duration of her treatment did not comport with such a finding.  (R. 26).  Instead, the ALJ noted that the rest of the record evidence, as summarized earlier in her opinion, "document[ed] abnormal mood and affect but usually normal speech and appearance, alertness, and oriented and normal thought process."  (*Id.* (citing 704-78, 817-983)).

Plaintiff argues that the ALJ's rejection of Patrone's opinion was conclusory, and that her "global reference" to exhibits "15F, 18F-20F" without specific pinpoint cites to individual page numbers precludes meaningful review.  (Pl.'s Br., ECF No. 8, at 17).  However, a review of the ALJ's decision shows that the ALJ in fact cited to specific pages in the record to support her conclusions earlier in her opinion when she reviewed these specific exhibits and highlighted the factors she later found most probative in her determination of Plaintiff's mental RFC.  (R. 21-25).[7]  Incorporating by reference these conclusions drawn from her detailed review of the medical evidence, she ultimately found Patrone's opinion inconsistent with the rest of the record evidence.  (R. 26-27).  Though Plaintiff may be correct that general allusions or citations to the record may be insufficient to satisfy the ALJ's duty to explain her rationale if they do not allow "the reviewing court and claimant [to] follow th[e] [ALJ's] logic," *see, e.g., Sparks v. Kijakazi*, No. 2:21-CV-102-DP, 2022 WL 4546346, at *7 (E.D. Tenn. Sept. 28, 2022), in this case, it is clear from the opinion which factors the ALJ relied upon in partially rejecting Patrone's opinion. *See Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 120 (3d Cir. 2016) (the Act requires only that the agency's path "may reasonably be discerned") (quoting *Christ the King Manor, Inc. v. Sec'y of Health & Hum. Servs.*, 730 F.3d 291, 305 (3d Cir. 2013)).  Therefore, this argument

---

[7]  In reviewing the medical evidence, the ALJ offered no less than 18 citations to specific page numbers within the exhibits mentioned.  (R. 24-25).

fails.

In rejecting Carter's September 14, 2023, opinion that Plaintiff would experience more than four "bad days" per month, during which her symptoms would increase and she would not be able to complete an eight-hour work shift, the ALJ found that this opinion was not supported by sufficient explanation nor was it consistent with the rest of the record evidence. (R. 27). In rendering his opinion, Carter did not offer any explanation for *why* he believed Plaintiff would experience more than four bad days per month, and the rest of his own treatment notes do not support such a conclusion. (R. 1010-13). In fact, Carter's opinion was a check-box form with no further explanation contained therein. *See Mason*, 994 F.2d at 1065 ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. As we pointed out in discussing 'residual functional capacity reports,' where these so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect . . . .'") (quoting *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir.1986)); *see also* 20 C.F.R. § 416.927(d)(3). Further, as noted above, the ALJ also highlighted other record evidence indicating Plaintiff's normal orientation, speech, appearance, alertness, and thought process to support her conclusion that Carter's opinion was not consistent with the rest of the record. (R. 27; 20 C.F.R. § 404.920c(b)(2) (The ALJ must explain how she considered the consistency of the opinion with the rest of the record evidence)).

Plaintiff's argument that the ALJ gave improper weight to the fact that Patrone's and Carter's findings were based on "one-time" examinations of Plaintiff also fails, as Plaintiff does not point to anything untoward about the ALJ's methodology. The ALJ indeed noted that these two evaluations were based on findings from single examinations, but there is nothing inherently improper about this. The ALJ's observation that Patrone based his opinion on only a single examination merely juxtaposes that opinion with the rest of the record, which spanned several

years.  The ALJ was within her discretion in finding that Patrone's opinion was not consistent

with the rest of the record.  *See Burnett*, 220 F.3d at 118; *Simmonds*, 807 F.2d at 58.

Relatedly, the ALJ also did not err by ignoring Patrone's and Carter's relationship with

Plaintiff, or their respective specializations.  As the Commissioner notes, the ALJ must only

articulate consideration of these factors to the extent that the ALJ determines the medical

opinions are equally as persuasive as other opinions on the same issue.  (Resp., ECF No. 12, at

18-19 (citing 20 C.F.R. § 416.920c(b)(3))).  However, the ALJ did not find either of these

opinions equally as persuasive as other opinions in the record.[8]  (R. 26-27).  And for the reasons

set out above, that finding was not error.  Therefore, the ALJ was not required to analyze the

factors advanced by the Plaintiff.  20 C.F.R. § 416.920c(b)(3).[9]

---

[8]  Of note, the ALJ found the opinions of Rattan and Rings persuasive, both of whom
opined that Plaintiff had moderate—not marked—limitations in her ability to: interact with
others; concentrate, persist, and maintain pace; respond appropriately to changes in the work
setting; accept instructions and respond appropriately to criticism from supervisors; maintain
attention and concentration for extended periods; perform activities within a schedule, maintain
regular attendance, and be punctual within customary tolerances; and adapt or manage herself.
(R. 25, 61, 68, 71-72).  These opinions, which the ALJ found well-supported and consistent with
the rest of the record evidence, directly contradict Patrone's finding that Plaintiff had marked
limitations in her ability to interact with supervisors and coworkers or respond appropriately to
usual work situations and to changes in a routine work setting.  (R. 26, 786-87).  Regarding
Carter's opinion, the ALJ simply found his opinion unpersuasive as it was not well-supported,
and that it was also inconsistent with the broader record pertaining to Plaintiff's normal
appearance, affect, and thought process.  (R. 27).  Plaintiff's claim in this regard is therefore
simply an invitation for this Court to reweigh the evidence, something this Court cannot do.  *See*
*Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (noting that district courts are not
"empowered to weigh the evidence or substitute [their] conclusions for those of the fact-finder")
(citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984)).

[9]  To the extent that Plaintiff argues that the ALJ failed to defer to Carter as a treating
provider, the regulations no longer assign any added weight to those opinions.  Instead, under the
current regulations ALJs must evaluate all medical opinions for persuasiveness based on several
factors, not giving any particular weight to the medical opinions and impressions of treating
providers.  *See* 20 C.F.R. § 416.920c(c); *Gallagher v. Kijakazi*, No. 20-cv-5701, 2022 WL
283017, at *5 (E.D. Pa. Jan. 31, 2022).

Turning to the ALJ's evaluation of Nires's opinion, this Court first notes that the ALJ did, in fact, consider that that opinion was from 2017, which in any event was during the alleged disability period. (*See* R. 26 ("[T]he undersigned notes that this opinion was rendered prior to the protective filing date in the current application and even in the prior application if reopening were appropriate.")). Nevertheless, the ALJ found that Nires's opinion was consistent with other record evidence and her overall RFC determination. (*Id.*). Importantly, Nires's opinion was not the only medical source that supported the ALJ's overall RFC determination, as the ALJ also relied upon the opinions of both Rattan and Rings, which were both issued in 2023. (*See* R. 25). Moreover, courts have permitted reliance on records that predate the ALJ's decision by a similar period as that here. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 312-13 (3d Cir.2000) (upholding a 1997 ALJ decision based on records from 1989 through 1994); *Hartranft*, 181 F.3d at 360-61 (finding substantial evidence where the ALJ relied on six-year-old medical records).

To the extent that Plaintiff contends the ALJ failed to weigh the opinions of Patrone and Carter against Nires's opinion, that contention is belied by the record. The ALJ surveyed the entirety of the record, specifically evaluated each medical opinion against that backdrop as well as each other, noted that the record evidence supported certain mental limitations, but found that Plaintiff could still perform light work with restrictions, and ultimately concluded that Nires's opinion—not those of Patrone or Carter—was consistent with the rest of the record. (R. 21-28). This type of fact-finding is entirely within the ALJ's authority, and her treatment of Nires's opinion was not in error. *Burnett*, 220 F.3d at 118; *Simmonds*, 807 F.2d at 58.

Insofar as Plaintiff contends that the Commissioner advances post hoc rationalizations for the ALJ's determination in this case, that contention is belied by the record for the reasons articulated above. As noted, the ALJ in fact reviewed the relevant exhibits in detail and noted the specific portions that she credited, adequately considered and rejected the opinions of Patron

and Carter, and properly evaluated Nires's opinion.  None of this was the Commissioner's own post hoc rationalization.

Lastly, though Plaintiff nominally argues that the ALJ erred in her treatment of Plaintiff's testimony regarding the severity of her mental impairments, it is clear from her brief that her argument in this regard is entirely predicated on her arguments surrounding the ALJ's treatment of the medical evidence.  She argues that the ALJ necessarily erred in not crediting Plaintiff's testimony because the ALJ had already erred in her evaluation of the medical evidence.  (Pl.'s Br., ECF No. 8, at 20-21 (citing 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence and other evidence . . . .")))  Plaintiff states "[i]n short, if the ALJ's analysis of the opinion evidence is defective to begin with, then any credibility assessment flowing from that must be defective also, i.e., 'garbage in, garbage out.'" (*Id.* at 21).  However, because those arguments fail for the reasons stated above, Plaintiff's derivative argument regarding the ALJ's treatment of Plaintiff's testimony also fails.

In sum, for the reasons laid out above, the ALJ did not err in her evaluation of the Patone's, Carter's, and Nires's opinions or Plaintiff's testimony.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**.  An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge